**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

WILSON SANCHEZ &
ROSANA GOMEZ,
individuals,

                                           Case No.:

       Plaintiffs,

v.

HYUNDAI CAPITAL AMERICA, INC. d/b/a
KIA MOTORS FINANCE,
a foreign profit corporation,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation,
EQUIFAX INFORMATION
SERVICES, LLC,
a foreign limited liability company, and
TRANS UNION, LLC,
a foreign limited liability company,

       Defendants.

_____/

## <u>COMPLAINT</u>

**COMES NOW**, Plaintiffs, WILSON SANCHEZ (hereinafter, "Mr.

Sanchez") and ROSANA GOMEZ (hereinafter, "Ms. Gomez")(hereinafter

collectively, "Plaintiffs"), by and through the undersigned counsel, and hereby sue

Defendants, HYUNDAI CAPITAL AMERICA, INC. d/b/a KIA MOTORS

FINANCE (hereinafter, "Kia"), EXPERIAN INFORMATION SOLUTIONS, INC.

(hereinafter, "Experian"), EQUIFAX INFORMATION SERVICES, LLC

1

(hereinafter, "Equifax"), and TRANS UNION, LLC (hereinafter, "Transunion")

(hereinafter collectively, "Defendants").  In support thereof, Plaintiff's state:

## **PRELIMINARY STATEMENT**

1.      This is an action brought by individual consumers for damages for
Kia's violation of the Fair Credit Reporting Act ("FCRA") wherein Kia unlawfully
reported an alleged car loan account in Plaintiff's consumer credit files as maintained
by Experian, Equifax, and Trans Union.

2.      More specifically, despite Plaintiffs advising Kia that they were not past
due on the alleged account, and after Plaintiffs disputed Kia's reporting of such
erroneous information directly to Experian, Equifax and Trans Union, Kia *continued*
to report the account as "past due" or "charged off".

3.      Additionally, this is an action for damages brought by an individual
consumer for Kia's violations of the Florida Consumer Collection Practices Act,
Chapter 559, Florida Statutes (hereinafter, the "FCCPA") wherein Kia communicated
directly with Plaintiff in an attempt to collect a consumer debt despite possessing
knowledge of Plaintiffs legal counsel with respect to such consumer debt as well as
possessing said legal counsel's contact information.

4.      Furthermore, this is an action for damages for Experian's, Equifax's,
and Trans Union's violations of the Reporting Act, 15 United States Code, Section
1681 *et seq*. (hereinafter, the "FCRA") FCRA wherein Experian, Equifax, and Trans
Union each continued to incorrectly report Plaintiffs as the individuals responsible

2

for the alleged Kia account after Plaintiffs repeatedly advised that such account was not past due or charged off, and after Plaintiff's provided information to Experian, Equifax, and Trans Union proving the same.

<strong><u>JURISDICTION, VENUE & PARTIES</u></strong>

5.      Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq*.

6.      Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

7.      Venue is proper in this District as the acts and transactions described herein occur in this District.

8.      At all material times herein, Plaintiffs are natural persons residing in Hernando County, Florida.

9.      At all material times herein, Kia does business in Florida.

10.      At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

11.      At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of business located at 1550 W Peachtree Street, Atlanta, Georgia 30309.

12.      At all material times herein, Trans Union is a foreign limited liability

company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

13.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

14.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

15.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

16.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the

4

consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

17.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

18.     Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

19.     Under the FCRA, any person who willfully fails to comply with any

5

requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

20. Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## FCCPA  STATUTORY STRUCTURE

21. The FCCPA is a state consumer protection statute, modeled after the federal FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy. Fla. Stat. §§ 559.55 and 559.77(5).

22. The FCCPA imposes liability on any creditor/person as well as any debt collector—who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer

6

debts. Fla. Stat. § 559.55(5).

23.     Specifically, the FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*." Fla. Stat. § 559.55(2) (emphasis added).

24.     Similarly, the FCCPA prohibits a person from collecting consumer debt by communicating with the consumer in a manner that can be expected to harass or abuse the consumer debtor, prohibits a person from asserting a legal right that does not exist, and prohibits a person from communicating directly with a consumer known to be represented by legal counsel in an attempt to collect consumer debt when such person possesses said legal counsel's contact information. *See* Fla. Stat. §§ 559.72(7), (9), and (18).

## GENERAL ALLEGATIONS

25.     At all material times herein, Plaintiffs are an alleged "consumer" or "debtor" as defined by the FCRA, Section 1681a(c).

26.     At all material times herein, Kia, itself and through its subsidiaries, regularly extends contracts for automobile loans—to consumers residing in Hernando County, Florida.

27.     At all material times herein, Kia is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by

7

15 United States Code, Section 1681s-2.

28.     At all material times herein, Kia attempts to collect and report information concerning an alleged automobile loan referenced by account number ending -8862 (hereinafter, the "Alleged Debt" or the "Account").

29.     At all material times herein, Kia furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

30.     At all material times herein, Experian, Equifax, and Trans Union are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Experian, Equifax, and Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

31.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

32.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

8

## **FACTUAL ALLEGATIONS**

33.    On or about February 2023, Plaintiffs entered into an automobile loan contract with Kia.

34.    On or about February 18, 2023, Plaintiff's jointly purchased a vehicle– a 2023 Kia Sportage (hereinafter "the vehicle")– from a Kia dealership, specifically, the Kia of Wesley Chapel.

35.    More specifically, Plaintiffs agreed to finance $45,753.18 and make monthly payments of $810.88 for 72 months, with the first payment being due on April 4, 2023.

36.    Plaintiffs took possession of the vehicle, executed the purchase of the vehicle, and left the dealership on February 18, 2023.

37.    Shortly after the purchase, Plaintiff's received a call from Kia in which they advised Plaintiffs to update their previous purchase agreement because Kia had secured a "better deal" for them that would be more convenient for Plaintiffs.

38.    Plaintiffs did not want to accept the terms of the "better deal" because they did not think the benefits outweighed the inconvenience of having to execute a new version of the purchase agreement with revised terms. The deal included the monthly payments being lowered by a total of $4.00, which Plaintiffs did not view as a significant enough material change in their monthly payments.

39.    However, Plaintiffs felt pressured by Kia to accept the "better deal", so

they electronically signed the updated purchase agreement that had been sent to them via email by Kia.

40.     One week after signing the aforementioned updated purchase agreement, Plaintiffs received a notification that someone had attempted to pull specifically Mr. Sanchez's credit report. As a result, their credit reports had been frozen and locked.

41.     Immediately after receiving the notification, Plaintiffs received a phone call from Kia asking them to unlock their credit reports so that Kia could access them.

42.     Additionally, Kia also informed Plaintiffs that there had been a "issue" in the execution of the updated purchase agreement and that Plaintiffs had to come back into the physical Kia dealer to re-do the purchase agreement for a third time.

43.     Plaintiffs did not authorize Wesley Chapel Kia to pull their credit reports after February 18, 2023, Plaintiffs did not sign the third version of the purchase agreement, and did not agree to sign the third version of the purchase agreement.

44.     Frustrated, Mr. Sanchez called Kia's corporate finance office. At first, Kia advised Mr. Sanchez that they did not see his loan or vehicle in their system. Kia's corporate office advised Mr. Sanchez that the dealership "put the wrong APR on the paperwork" and therefore Kia had denied the loan application.

45.     Following Plaintiffs conversation with Kia's corporate office, Wesley Chapel Kia told Mr. Sanchez to return the vehicle and re-start the purchase process because the "first deal won't go through".

46.     Frustrated with the entire situation, Plaintiffs decided to stop engaging with the Wesley Chapel Kia dealership and were no longer looking to purchase a vehicle from the Wesley Chapel Kia location.

47.     On or about March 20, 2023, Plaintiffs went to another Kia location, specifically Ken Ganley Kia dealership, in attempt to try and remedy all the prior errors that had encountered with the Wesley Chapel Kia location. The general manager of the Ken Ganley Kia dealership advised Plaintiffs that their previous purchase agreement with Wesley Chapel Kia was not fundable and therefore was not valid.

48.     On or about March 11, 2023, Plaintiffs returned the 2023 Kia Sportage to the Wesley Chapel Kia dealership.

49.     Despite all the previous errors and complications Plaintiffs had already experienced trying to buy a vehicle from this location, Wesley Chapel Kia still attempted to convince Plaintiffs to a new purchase agreement and purchase a new vehicle from them while returning the 2023 Kia Sportage.

50.     On or about March 12, 2023, Plaintiffs purchased two new vehicles from the Ken Ganley Kia dealership.

11

51.     As a result, from March 12, 2024, onwards Plaintiffs had and still currently have two (2) active and open accounts with Kia.

52.     More specifically, Plaintiffs should only have two (2) Kia accounts reported in any of their credit reports and credit files. The two (2) active Kia accounts are identified by account numbers beginning in 2023030280- and 2023030289-, both opened in March 2023. These accounts are accurate and Plaintiffs are not disputing these two (2) accurate accounts.

53.     On or about May 20, 2023, Kia communicated with Mr. Sanchez and advised him that he was past due on his loan for the 2023 Kia Sportage.

54.     Mr. Sanchez advised Kia that he had returned the 2023 Kia Sportage to Wesley Chapel Kia back in about March 11, 2023.

55.     Frustrated and tired of dealing with Wesley Chapel Kia, Plaintiffs ceased all communications and did not respond to their unfounded requests that Plaintiffs pay for the alleged past due balance owed for the Account.

56.     Plaintiffs continued to make their scheduled payments for their two (2) active Kia accounts.

57.     On or before June 2023, Plaintiffs obtained copies of their credit reports from Experian, Equifax, and Trans Union.

58.     Plaintiffs noticed that a Kia Account that had been opened due to the initial purchase of the 2023 Kia Sportage, which they had returned in March 2023,

was being reported as past due or charged off on their reports. Reporting the Account as such was inaccurate because the Account should have been removed or deleted from both Plaintiffs' credit reports.

59.     Experian, Equifax, and Trans Union inaccurately reported three (3) Kia accounts on Plaintiff's credit reports. Reporting of the Account should have ceased once the 2023 Kia Sportage was returned, and as such, the Account should have been removed or deleted from Plaintiffs' reports, leaving only two (2) Kia accounts to be reported on Plaintiffs' credit reports.

60.     More specifically, Plaintiffs provided Kia with sufficient information to correct the reporting of the Account. Plaintiffs disputed the alleged balance owed, advised that the Account should have been removed and must therefore be deleted, and demanded that Kia report the Account accurately to all other consumer reporting agencies to which Kia furnished the information and that compile and maintain files on consumers on a nationwide basis.

61.     The $45,674.00 alleged balance for the Account, being reported as past due or overcharged, was the balance allegedly owed by Plaintiffs before returning the 2023 Kia Sportage.

62.     Despite Plaintiffs only signing two purchase agreements with Wesley Chapel Kia that were subsequently voided, despite Plaintiffs refusing to sign a third contract with Wesley Chapel Kia , despite Kia's corporate office advising Plaintiffs

that it did not have Plaintiffs' loan in Kias system, and despite Plaintiffs' returning the vehicle as instructed by both Kia dealerships, Kia is now reporting a tradeline account (i.e., the Account) associated with the Kia Sportage that was returned to Wesley Chapel Kia.

63.     This loan Account was never formally finalized because Plaintiffs were not approved for the terms in the initial purchase agreement for the 2023 Kia Sportage, the previous contracts Plaintiffs signed were voided by Wesley Chapel Kia and Wesley Chapel Kia was or still is in possession of the vehicle.

64.     As such, it is materially inaccurate and misleading to report a balance of over $45,000.00 on the Account. Plaintiffs were never late or past due on the Account, the Account was not "repossessed," and the Account should not be reported as charged off. The Account should be reported as deleted or removed as of March 2023.

**PLAINTIFFS' FIRST DISUPUTE**

65.     On or about January 31, 2024, and with the assistance of their attorneys, Plaintiffs sent a letter to Experian, Equifax, and Trans Union disputing defendants' reporting of the Account, advising the Account should have been reported as deleted, removed, and having no balance past due pursuant to the return of the vehicle, and demanding that Experian, Equifax, and Trans Union investigate and update accordingly (hereinafter "Plaintiff's First Dispute").

66. Plaintiffs' First Dispute provided sufficient information to allow Experian, Equifax, Trans Union to identify Plaintiffs' credit files, including Plaintiffs' names, dates of birth, last four digits of their social security numbers, and their current address.

67. Experian, Equifax, and Trans Union received Plaintiffs' First Dispute.

68. Experian, Equifax, and Trans Unions communicated Plaintiffs' First Dispute to Kia, including all enclosed documents.

69. Kia received Plaintiffs' First Dispute from Experian, Equifax, and Trans Union.

70. On or about March 2024, Plaintiffs received copies of their credit reports from Experian, Equifax, and Trans Union.

71. Despite Plaintiffs' having returned the 2023 Kia Sportage and the purchase agreement for the vehicle being voided, Experian's, Equifax's, and Trans Union's credit reports generated in March 2024 reported the Account as past due or charged off with an alleged balance of over $45,000.00.

72. Notably, on February 15, 2024, Trans Union responded to Plaintiffs' First Dispute by sending both Plaintiffs a letter explaining that they could not disclose any of the information relayed in Plaintiffs' First Dispute since it came from an unauthorized third party, the third party being Plaintiffs' lawyers.

73. Additionally, Trans Union informed Plaintiffs that they would only

process and requests for information if the request came directly from Plaintiffs, not an unauthorized third party.

74.     Despite Plaintiffs dispute, Kia, Experian, Equifax, and Trans Union still failed to conduct a reasonable investigation and continued reporting the Account as past due or charged off with an alleged balance due of over $45,000.00.

75.     Clearly, Kia, Experian, Equifax, and Trans Union each failed to conduct a reasonable investigation in response to Plaintiffs' First Dispute, because if Defendants had conducted reasonable investigations and re-investigations, Kia, Experian, Equifax, and Trans Union would have known that the return of the vehicle On March 11, 2023, eliminated Plaintiffs' personal liability on the Account resulting in a zero-dollar ($0.00) balance.

76.     Kia's, Experian's, Equifax's, and Trans Union's failure to conduct reasonable investigations and re-investigations into Plaintiffs First Dispute was unreasonable given the information provided in Plaintiffs First Dispute.

## PLAINTIFFS' SECOND DISPUTE

77.     As of about March 2024, Experian, Equifax, and Trans Union were still reporting the Account inaccurately with an alleged past due or charged off balance of $45,000.00.

78.     On or about March 28, 2024, with the assistance of their attorneys, Plaintiffs sent another letter to Experian, Equifax, and Trans Union again disputing

Defendants' credit reporting of the Account, again advising that the Account should have been reported as deleted, removed, and having no balance past due pursuant to the return of the vehicle, and demanding that Experian, Equifax, and Trans Union investigate and update accordingly (hereinafter "Plaintiff's Second Dispute").

79.    Plaintiffs' Second Dispute provided sufficient information to allow Experian, Equifax, Trans Union to identify Plaintiffs' credit files, including Plaintiffs' names, dates of birth, last four digits of their social security numbers, and their current address.

80.    Experian, Equifax, and Trans Union received Plaintiffs' Second Dispute.

81.    Experian, Equifax, and Trans Unions communicated Plaintiffs' Second Dispute to Kia, including all enclosed documents.

82.    Kia received Plaintiffs' Second Dispute from Experian, Equifax, and Trans Union.

83.    On or about June 2024, Plaintiffs received copies of their credit reports from Experian, Equifax, and Trans Union.

84.    Despite Plaintiffs' having returned the 2023 Kia Sportage and the purchase agreement for the vehicle being voided, Experian's, Equifax's, and Trans Union's credit reports generated in June 2024 reported the Account as past due or charged off with an alleged balance of over $45,000.00.

85.    Clearly, Kia, Experian, Equifax, and Trans Union each failed to conduct a reasonable investigation in response to Plaintiffs' Second Dispute, because if Defendants had conducted reasonable investigations and re-investigations, Kia, Experian, Equifax, and Trans Union would have known that the return of the vehicle On March 11, 2023, eliminated Plaintiffs' personal liability on the Account resulting in a zero-dollar ($0.00) balance.

86.    Kia's, Experian's, Equifax's, and Trans Union's failure to conduct reasonable investigations and re-investigations into Plaintiffs' Second Dispute was unreasonable given the information provided in Plaintiffs' Second Dispute.

87.    Additionally, on or about March 14, 2024, Kia sent Plaintiffs a letter informing them of an amount of deficiency owed regarding the Alleged Debt owed.

88.    Specifically, on the March 14, 2024, letter Kia informed Plaintiffs that they sold the vehicle, or collateral, and the deficiency still owed on the Alleged Debt is a balance of $14,914.69 despite Plaintiffs' previously signed purchase agreements were voided by Wesley Chapel Kia and Wesley Chapel Kia was or still is in possession of the vehicle as Plaintiffs returned the vehicle on or about March 11, 2023.

89.    As of June 2024, Experian, Equifax, and Trans Union were still reporting the Account inaccurately with and alleged past due or charged off balance of over $45,000.00.

18

## **DAMAGES**

90.     As a result of Defendants' reporting of the Debt, Plaintiffs further dealt with the stress and anxiety of feeling hopeless, believing that they will be denied credit as a result of the erroneous and incorrect reporting of the Account reflecting the Alleged Debt asserted as owed by Kia if they need to obtain credit in the near future, and that Plaintiffs would either be denied credit or pay higher interest rates in the event they could obtain financing.

91.     Overall, Plaintiffs suffered damage to their otherwise pristine credit reputation as a result of Defendants' conduct.

92.     Plaintiff retained Swift Law PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

93.     The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiffs, should Plaintiffs prevail in this matter against Kia, Experian, Equifax, and Trans Union.

94.     Kia's conduct was a direct and proximate cause of, as well as a substantial factor in, causing serious injuries, damages, and harm to Plaintiffs.

95.     As a result of Defendants' conduct, actions, and inactions, Plaintiffs were deterred from making credit applications as they believed they would not be

19

able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, They did not wish to further damage their credit score with futile credit inquires, and they were continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

96.     As a result of the significant drop in Plaintiffs' credit scores, they suffered reduction in credit limits with active credit accounts they already had prior to the Account being reported inaccurately. This severely hurt their ability to maintain their financial stability.

97.     As a result of the significant drop in Plaintiffs' credit scores, they also suffered some credit lines being closed without warning following Defendants inaccurate reporting of the Account.  This severely hurt their ability to maintain their financial stability.

98.     Additionally, as a result of Defendants' actions, Plaintiffs suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiffs' exhaustive efforts to convey to Kia that they were not past due on the Account including supplying Defendants with supporting documentation, Plaintiffs must simply endure Defendants' reporting of the Account.

**COUNT ONE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)**
**(As to Kia Only)**

Plaintiffs re-allege paragraphs one (1) through ninety-eight (98) as if fully restated herein and further states as follows:

99.    Kia is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Equifax, Experian, and Trans Union correct the Account on Plaintiff's credit reports and credit file after re-investigating Plaintiff's repeated disputes.

100.   As described above, Plaintiffs do not have an active Account with Kia ending in -8862, no longer own or have possession of the vehicle associated with said Account, and do not owe a past due or charged off balance for the Account.

101.   Despite Plaintiffs only signing two purchase agreements with Wesley Chapel Kia that were subsequently voided, despite Plaintiffs refusing to sign a third contract with Wesley Chapel Kia, despite Kia's corporate office advising Plaintiffs that it did not have Plaintiffs' loan in Kias system, and despite Plaintiffs' returning the vehicle as instructed by both Kia dealerships, Kia continues to report the Account associated with the 2023 Kia Sportage that was returned to Wesley Chapel Kia.

102.   In or around January 2024, Kia received notice of Plaintiffs Dispute from Experian, Equifax, and Trans Union.

103.   Following Plaintiffs First Dispute, Kia confirmed and/or verified its false reporting to Experian, Equifax, and Trans Union, showing that the Account was reported with an incorrect balance, past due, or charged off, Kia still failed to remove the Account or report the Account with a zero-dollar balance due.

104.   In or about March 2024, Kia received notice of Plaintiffs' Second Dispute from Experian, Equifax, and Trans Union, as well as copies of all the documents enclosed with Plaintiffs' Second Dispute.

105.   Following Plaintiffs' Second Dispute, Kia *again* confirmed and/or verified its false reporting to Experian, Equifax, and Trans Union, *continued* to report the account as "past due" or "charged off", and Kia *still* failed to report the Account as deleted or removed as of March 2023.

106.   As such, it is materially inaccurate and misleading to report a balance of over $45,000.00 on the Account. Plaintiffs were never late or past due on the Account, the Account was not "repossessed," and the Account should not be reported as charged off.

107.   Kia's refusal to request that Experian, Equifax, and Trans Union, correct the tradelines associated with the Account was intentionally, willfully, and knowingly done as Kia clearly possessed knowledge of the inaccurate information

on the Account as reported by Plaintiffs.

108. Kia's re-investigations were not conducted in good faith.

109. Kia's re-investigations were not conducted reasonably.

110. Kia's re-investigations were not conducted using all information reasonably available to Kia.

111. As a result of Kia's conduct, actions, and inactions, Plaintiffs suffered damage to their credit reputation and credit worthiness, were deterred from making additional credit applications as they believed they would not be able to obtain favorable credit terms as a result of Kia's derogatory and continued reporting of the Account and did not wish to further damage their credit score with futile credit inquires, and they were continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

112. Kia's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiffs as stated herein.

113. Kia's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiffs to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or

1681o, or both.

### COUNT TWO
### FAIR CREDIT REPORTING ACT –
### <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)</u>
### (As to Experian, Equifax, and Trans Union)

Plaintiffs re-allege paragraphs one (1) through ninety-eight (98) as if fully restated herein and further states as follows:

114.   Experian, Equifax, and Trans Union are subject to and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

115.   Experian, Equifax, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiffs' credit reports regarding the Account.

116.   Despite repeated disputes from Plaintiffs advising Experian, Equifax, and Trans Union that the Account should never have existed and must therefore be deleted or reported as deleted, Experian, Equifax, and Trans Union continued reporting the Account inaccurately or with an alleged past-due balance due of over $45,000.00.

117.   More specifically, Despite Plaintiffs only signing two purchase agreements with Wesley Chapel Kia that were subsequently voided, despite

24

Plaintiffs refusing to sign a third contract with Wesley Chapel Kia, despite Kia's corporate office advising us that it did not have Plaintiffs' loan in Kias system, and despite Plaintiffs' returning the vehicle as instructed by both Kia dealerships, Experian, Equifax, and Trans Union continued to report the Account as "past due" or "charged off".

118.   Such reporting of the Account is false and evidences Experian's, Equifax's, and Trans Union's failure or follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs' credit reports and credit files.

119.   The approximate $45,000.00 balance was for the 2023 Kia Sportage associated with Wesley Chapel Kia, which Plaintiffs are not personally liable for since the purchase agreements they signed for the collateral was voided and the vehicle was returned to Kia–and Wesley Chapel Kia was or still is in possession of the vehicle–on or about March 11, 2023.

120.   As such, it is inaccurate and/or materially misleading to report the as "past due" or "charged off" at any time after March 11, 2023.

121.   Between June 2023 and the date of this Complaint, Experian, Equifax, and Trans Union generated and published Plaintiffs credit reports to Plaintiffs creditors and potential lenders including the above-referenced inaccurate, incomplete, and/or materially misleading information.

122.   Overall, Experian, Equifax, and Trans Union willfully and/or

negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiffs credit reports and credit files when investigating/re-investigation Plaintiffs disputes of the above-referenced inaccuracies contained in their credit reports and credit files.

123.   As a result of Experian's, Equifax's, and Trans Union's conduct, actions, and inactions, Plaintiffs suffered damage to their credit reputation and credit worthiness, were denied credit, were deterred from making additional/further credit applications as they believed they would not be able to obtain favorable credit terms as a result of Defendants derogatory and continued reporting of the Account and did not wish to further damage their credit report with futile credit inquiries, and they were continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as derogatory, negative, or adverse tradeline account.

124.   Experian's, Equifax's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiffs as stated herein.

125.   Experian's, Equifax's, and Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance-or both-with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States

Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE**
**SECTION 1681i(a)(1), i(a)(4), and i(a)(5)**
**(As to Experian, Equifax, and Trans Union)**

Plaintiffs re-allege paragraphs one (1) through ninety-eight (98) as if fully restated herein and further states as follows:

126. Experian, Equifax, and Trans Union is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), 1681i(a)(4), and 1681i(a)(5) by: (1) failing to conduct reasonable investigations/re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; (2) failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and (3) failing to update or delete any information that was the subject of Plaintiffs disputes found to be inaccurate or that could not be verified.

127. Specifically, Experian, Equifax, and Trans Union willfully and/or negligently refused to properly investigate/re-investigate Plaintiffs consumer reports upon receiving Plaintiffs disputes, as described herein.

128. For example, after Plaintiffs' First Dispute, Experian, Equifax, and Trans Union failed to request any documents from Kia proving Plaintiffs dispute as

fact.

129.   Instead, following Plaintiffs' First Dispute, Experian, Equifax, and Trans Union each parroted purported verifications from Kia, and continued to report the Account as "past due" or "charged off", with an alleged balance of over $45,000.00.

130.   Experian, Equifax, and Trans Union did not request any documents from Kia corroborating information furnished and/or verified by Kia regarding Plaintiffs and the Account in response to any of Plaintiffs disputes, and Experian, Equifax, and Trans Union wholly ignored the documents submitted by Plaintiffs with their repeated disputes.

131.   Experian's, Equifax's, and Trans Union's failure to review and consider all information received in Plaintiffs' disputes was done in bad faith.

132.   Despite receiving Plaintiffs' First Dispute and Second Dispute, each of which explained that Plaintiffs returned the 2023 Kia Sportage to the Wesley Chapel Kia dealership on or about March 2023, which allowed Experian, Equifax, and Trans Union to determine that Plaintiffs were never late or past due on the Account, the Account was not "repossessed," and the Account should not be reported as charged off. Experian, Equifax, and Trans Union should have reported the Account should be reported as deleted or removed as of March 2023.

133.   As such, Experian's, Equifax's, and Trans Union's investigations/re-

investigations were not conducted in such a way as to assure whether information regarding Plaintiffs and the Account was inaccurate and Experian, Equifax, and Trans Unions failed to subsequently correct the inaccurate information in Plaintiffs credit reports and credit files.

134.   Such reporting is false and evidences Experian's, Equifax's, and Trans Union's respective failures to conduct reasonable investigations/re-investigations of Plaintiffs repeated disputes.

135.   Experian's, Equifax's, and Trans Union's investigations/re-investigations of Plaintiffs disputes were not conducted reasonably.

136.   Experian's, Equifax's, and Trans Union's investigations/re-investigations merely copied, parroted, and relied upon the inaccurate Account information conveyed by Kia.

137.   Experian's, Equifax's, and Trans Union's investigation/re-investigations of Plaintiffs disputes were not conducted in good faith.

138.   Experian's, Equifax's, and Trans Union's investigation/re-investigations of Plaintiffs disputes were not conducted using all the information and documents reasonably available to Experian, Equifax, and Trans Union.

139.   As a result of Experian's, Equifax's, and Trans Union's conduct, actions and inactions, Plaintiffs suffered damage to their credit reputation and credit worthiness, were denied credit, were deterred from making additional/further credit

29

applications as they believed they would not be able to obtain favorable credit terms as a result of Defendants derogatory and continued reporting of the Account and did not wish to further damage their credit report with futile credit inquiries, and they were continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as derogatory, negative, or adverse tradeline account.

140.    Experian's, Equifax's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

141.    Experian's, Equifax's, and Trans Union's violations of 15 United States Code Section 1681i(a)(1), 1681i(a)(4), and 1681i(a)(5) constitute negligent or willful noncompliance-or both-with the FCRA, and entitle Plaintiffs to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT FOUR:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(7)**
**(As to Kia)**

Plaintiffs re-allege paragraphs one (1) through ninety-eight (98) as if fully restated herein and further states as follows:

142.    Kia is subject to and violated the provisions of Florida Statutes, Section 559.55(7) by collecting a consumer debt from Plaintiff through means which can

30

reasonably be expected to abuse or harass Plaintiff.

143. Specifically, Kia possessed actual knowledge of Plaintiffs' First Dispute and Plaintiffs' Second Dispute, stating that Plaintiffs were never late or past due on the Account, the Account was not "repossessed," and the Account should not be reported as charged off. The Account should be reported as deleted or removed as of March 2023.

144. More specifically, Kia possessed the knowledge that Plaintiffs were not approved for the terms in the initial purchase agreement for the 2023 Kia Sportage, the previous contracts Plaintiffs signed were voided by Wesley Chapel Kia and Wesley Chapel Kia was or still is in possession of the vehicle.

145. Despite possessing the aforementioned knowledge, Kia attempted to communicate with Plaintiffs in an effort to collect the alleged debt for the amount of the deficiency Plaintiffs allegedly owe Kia—an alleged balance of $14,914.69—associated with the sale of the vehicle, or collateral, to pay off the Alleged Debt.

146. Each time Plaintiffs received a communication advising that Kia attempted to collect the alleged debt from Plaintiffs, thee would attempt to get in contact with Kia to dispute the debt immediately.

147. Additionally, Kia sent at least one (1) collection letter directly to Plaintiffs in an attempt to collect the Alleged Debt.

148. Therefore, Kia's collection letter dated March 14, 2024 constitutes a

**Commented [LC1]:** Is it okay to specifically reference the collection letter or should I delete this paragraph.

direct attempt by Kia to collect the Alleged Debt from Plaintiffs.

149.   Kia made each communication in an attempt to abuse and harass Plaintiff into paying the Debt by leading them to believe Kia could and would continue to communicate with Plaintiffs in an attempt to collect the Debt—despite Plaintiffs First Dispute and Plaintiffs Second Dispute—unless and until Plaintiffs made payment to Defendant on the Alleged Debt.

150.   In other words, Defendant's conduct served no purpose other than to wrench payment from Plaintiffs.

151.   Defendant's willful violation of, inter alia, the Florida Consumer Collection Practices Act as a means to collect the Debt constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

152.   As a direct and proximate result of Defendant's action, Plaintiffs sustained damages as defined by Florida Statutes, Section 559.77.

153.   **WHEREFORE**, Plaintiffs requests this Court enter a judgment against Defendant for $1,000.00 statutory damages, actual damages, costs, attorneys' fees and such other equitable relief this Court deems appropriate.

**COUNT FIVE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(9)**
**(As to Kia)**

Plaintiffs re-allege paragraphs one (1) through ninety-eight (98) as if fully restated herein and further states as follows:

154.   Kia is subject to, and violated the provisions of, Florida Statutes, Section 559.72(9) by attempting to collect the alleged debt with knowledge that the alleged debt is not legitimate or by asserting the existence of some legal right when Defendant knows that the right does not exist.

155.   Specifically, Kia possessed actual knowledge that the Account was never formally finalized because Plaintiffs were not approved for the terms in the initial purchase agreement for the 2023 Kia Sportage, the previous contracts Plaintiffs signed were voided by Wesley Chapel Kia, and Wesley Chapel Kia was or still is in possession of the vehicle.

156.   Additionally, on or about March 11, 2023, Plaintiffs returned the 2023 Kia Sportage to the Wesley Chapel Kia dealership thus eliminating any personal liability Plaintiffs had associated with the Account.

157.   Despite possessing the aforementioned knowledge, Kia communicated with Plaintiffs several times in its attempts to collect the Debt.

158.   Each time, Plaintiffs received a communication advising that Kia attempted to collect the alleged debt from Plaintiffs and that the balance on their Account was being reported accurately.

159.   Additionally, Kia sent at least one (1) collection letter directly to Plaintiffs in an attempt to collect the Alleged Debt.

160.   During the course of Kia's attempts to collect the Debt, Defendant

knowingly and falsely asserted that it possessed the legal right to collect the Debt from Plaintiffs personally despite knowing of Defendants reporting of the Account, Defendants could and would continue to communicate with Plaintiffs in an attempt to collect the alleged balance—circumventing Plaintiffs' evidence that the Account should have never existed in the first place—unless and until Plaintiffs made payment to Defendant on the Debt.  Defendant knew they did not possess such a right.

161.   As a direct and proximate result of Defendants actions, Plaintiffs sustained damages as defined by Florida Statutes, Section 559.77.

162.   **WHEREFORE**, Plaintiffs requests this Court enter a judgment against Defendant for $1,000.00 statutory damages, actual damages, costs, attorneys' fees and such other equitable relief this Court deems appropriate.

## **PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiffs respectfully requests an entry of:

a.   Judgment against Kia. Experian, Equifax, and Trans Union violated for maximum statutory damages for violations of the FCRA;

b.   Judgment against Kia declaring that Kia violated the FCCPA;

c.   Actual damages in an amount to be determined at trial;

d.   Compensatory damages in an amount to be determined at trial;

34

e.    Punitive damages in an amount to be determined at trial;

f.    An award of attorney's fees and costs; and

g.    Any other such relief the Court may deem proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands a trial by jury on all issues triable by right.

## **SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE**

Plaintiffs hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

/s/ *Jon P. Dubbeld*

**Aaron M. Swift, Esq., FBN 0093088**
**Jordan T. Isringhaus, Esq., FBN 0091487**
**Jon P. Dubbeld, Esq., FBN 105869**
**Sean E. McEleney, Esq., FBN 125561**
11300 4th St. N.,
Suite 260
St. Petersburg, FL 33716
Phone: (727) 755-3676
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
jdubbeld@swift-law.com
smceleney@swift-law.com
*Counsel for Plaintiff*

35